IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDGAR RENE MIER-GARCES, | : | Civil No. 1:25-CV-02444 |
| Petitioner, | : | |
| v. | : | |
| JEFFREY GREENE, | : | |
| Respondent. | : | Judge Jennifer P. Wilson |

### **MEMORANDUM**

Before the court is a petition for writ of habeas corpus filed by Edgar Rene Mier-Garces ("Petitioner"). (Doc. 1.) Specifically, Petitioner alleges that a federal statute and his constitutional rights have been violated by the Bureau of Prisons' ("BOP") refusal to apply his earned time credits under the First Step Act ("FSA") in excess of 365 days towards placement in prerelease custody due to his status as a non-citizen. (*Id.*) He also challenges the lack of the five-factor review under the Second Chance Act ("SCA"). The court finds that Petitioner's claims under the FSA are not cognizable under Section 2241 and his claims under the SCA are not exhausted. The court will dismiss the petition.

### **BACKGROUND**

Petitioner initiated this action by filing a petition for writ of habeas corpus in December of 2025. (Doc. 1.) Petitioner provides documentation that shows he was granted the full 365 days of early release based on earned time credits under

1

the FSA.  (Doc. 1-7, p. 2.)¹  However, it appears that he has earned time credits in excess of the 365-days, totaling 775 days, which the BOP now refuses to apply towards early placement in prerelease custody based on his status as an "IHP" participant or a non-citizen with an active detainer.  (Doc. 1; Doc. 1-4; Doc. 1-7, p. 2.)  Additionally, the records attached to the petition demonstrate that the BOP determined that Petitioner is not eligible for placement in prerelease custody under the SCA because of an immigration detainer.  (Doc. 1-7, p. 4.)

      Based on this denial by the BOP, Petitioner filed in the instant petition with the following seven challenges: (1) "[t]he BOP has unlawfully violated the statutory test and mandatory provisions of the [FSA], which is federal law"; (2) "[t]he BOP has illegitimately exceeded its statutory authority based on: (i) its categorical denial and/or refusal to transfer me to Prerelease Custody entirely based on discretionary criteria; and , (ii) its calculated failure to provide notice or publish its unlawful policies contained in its Covert Memoranda"; (3) "[t]he BOP has unlawfully imposed a 365-day limit on the application of earned and accrued FSA Time Credits which 'caps' or 'limits' the application and use of all earned and accrued FSA Time Credits even though I do not have an immigration detainer; (4) "[p]ursuant to its covert April 8, 2025 BOP Internal Memorandum, the BOP has also unlawfully and illicitly eliminated 'Prerelease Custody' as other statutory

---

¹ For ease of reference, the court uses the page numbers from the CM/ECF header.

mandated by the U.S. Congress under the FSA"; (5) "[t]he BOP has patently violated my Constitutionally protected liberty interest because the FSA has created a new and separate entitlement to early release to Prerelease Custody and supervised release based on my earned and accrued FSA Time Credits . . . which must be applied as I am fully eligible for such application(s)"; (6) "[t]he BOP has additionally materially violated his rights under the Due Process Clause of the Fifth Amendment because due process protections do apply as I have appropriately demonstrated and evidenced a protected liberty interest under the FSA, which is a federal law"; and (7) "[t]he BOP has additionally violated specific non-discretionary statutory provisions of the SCA as under 18 U.S.C. § 3624(c). I had a statutory right for individual consideration of the five SCA factors descried in 18 U.S.C. § 3621(b); but the BOP has utterly refused to conduct such determination based on a categorical refusal to conduct such determination for Non-U.S. Citizen prisoners with immigration detainers and/or IHP Participant designation." (Docs 1, 1-1.)

Petitioner paid the requisite filing fee on December 30, 2025. (Doc. 4.) The court will now screen the petition pursuant to Rule 4.

## VENUE

A § 2241 petition must be filed in the district where the petitioner is in custody. *See Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484,

494–95 (1973) ("The writ of habeas corpus does not act upon the person who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody.")  Petitioner is being held at FCI-Allenwood in Union County, Pennsylvania, which is in this district.  *See* 28 U.S.C. § 118(b).  Therefore, this court is the proper venue for the action.

## STANDARD

This matter is before the court for screening pursuant to 28 U.S.C. § 2243.  The § 2241 petition has been given preliminary consideration pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. § 2254 (applicable to § 2241 petitions under Rule 1(b)).  Rule 4 may be applied at the discretion of the district court as it is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer.  *Allen v. Perini,* 424 F.2d 134, 141 (6th Cir. 1970).

## DISCUSSION

### A. Petitioner's Habeas Challenge to the BOP's Application of the First Step Act Is Not Cognizable Under Section 2241.

In his habeas petition, Petitioner argues that the BOP has improperly denied pre-release custody he alleges is mandatory under the FSA and has refused to complete the five-factor analysis under the Second Chance Act ("SCA").  The initial question Petitioner presents concerning the application of FSA earned time

credits in excess of 365-days has been controversial among federal courts.  The question is whether it is mandatory or discretionary for the BOP to apply credits accrued under the FSA in excess of the 365-day early release period and applicable to early pre-release custody.

The FSA allows eligible inmates who successfully complete evidence-based recidivism reduction programs or productive activities to receive time credits to be applied toward time in pre-release custody or supervised release.  *See* 18 U.S.C. § 3632(d)(4)(A), (C).  An inmate can earn ten (10) days of credit for every thirty (30) days of successful participation.  *See id*. § 3632(d)(4)(A)(i).  Furthermore, eligible inmates assessed at a minimum or low risk of recidivism who do not increase their risk of recidivism over two (2) consecutive assessments may earn five (5) additional days of time credit for every thirty (30) days of successful participation, for a total of fifteen (15) days' time credit per thirty (30) days' successful participation.  *See id*. § 3632(d)(4)(A)(ii).

If time credits under the FSA are properly earned by an eligible inmate, application of those time credits to a prisoner's sentence is governed by 18 U.S.C. § 3624(g).  Section 3632(d)(4)(E)(i) provides "[a] prisoner is ineligible to apply time credits under subparagraph (C) if the prisoner is the subject of a final order of removal under any provision of the immigration laws[.]"  However, there are individuals, such as petitioner, who are subject to an immigration detainer that is

not a final order of removal. Therefore, Petitioner is still considered eligible for the application of his FSA credits.

The FSA further states "the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632." 18 U.S.C. § 3624(g)(3). "Thus, the time credits may be used to transfer a prisoner into prerelease custody earlier than he otherwise would be and to release the prisoner to supervised release up to 12 months earlier than he would be." *Malik v. Warden Loretto FCI*, No. 23-2281, 2024 WL 3649570, at *1 (3d Cir. Aug. 5, 2024).

There is currently a split among district courts as to whether earned time credits in excess of the maximum 365 days is statutorily required to be applied towards time in prerelease custody, or if the application of credits to prerelease custody is in the sole discretion of the BOP.

A number of courts have interpreted § 3632(d)(4)(C) to mandate that *all* earned time credits must be applied *either* toward early supervised release *or* toward pre-release custody because there is no statutory cap on time credits applied toward pre-release custody. *See Mohammed v. Engleman*, No. 2:25-CV-01011-MWC-MBK, 2025 WL 1909836, at *13 (C.D. Cal. July 9, 2025), *report and recommendation adopted*, No. 2:25-CV-01011-MWC-MBK, 2025 WL 2294325

(C.D. Cal. Aug. 8, 2025); *see Mateo v. Warden, FCI Danbury*, No. 3:25-CV-00814 (VAB), 2025 WL 2625263, at *8 (D. Conn. Sept. 11, 2025) ("The BOP's decision" to deny application of time credits in excess of those applied to supervised release "conflicts with the First Step Act's express language: time credits "shall be applied toward time in prerelease custody or supervised release.""); *Williams v. Warden, FCI Berlin*, No. 23-CV-509-LM-AJ, 2025 WL 2207024, at *5 (D.N.H. Aug. 4, 2025) ("Because the [BOP] memoranda purport to cap the application of Williams's time credits and deny him the ability to apply time credits toward placement in prerelease custody on the basis of an ineligibility criterion that does not appear in the FSA, the memoranda violate the FSA.")

In contrast, other courts have found that the application of excess earned time credits to placement in pre-release custody is in the discretion of the BOP. *See*, *e.g.*, *Akinmadeyemi v. Warden Thompson, FCI Fort Dix*, No. 27-7003, 2025 WL 2857084, at *2 (D.N.J. Oct. 9, 2025) (finding that the sole discretion of where an inmate is housed is held with BOP) *citing Tapia v. United States*, 564 U.S. 319, 331 (2011) and *Pisman v. Warden, Allenwood FCI Low*, No. 23-2048, 2023 WL 6618238, at *1 (3d Cir. Oct. 11, 2023) ("pre-release placement decisions are committed to the BOP's sole discretion").

Other courts have taken a third approach and held that the application of excess credits under the FSA is not cognizable under Section 2241. *See*, *e.g.*,
7

*Balsam v. Warden, Coleman – Low*, No. 5:24-cv-360-SPC-PRL, 2025 WL 2687234 (M.D. Fl. Sep. 19, 2025) (finding that such claims concern the conditions of his confinement and not the execution of his sentence and is not redressable through a habeas proceeding).

This district, too, has differing decisions on the issue of whether the claim is cognizable under Section 2241.  In *Miles v. Arviza*, District Judge Munley explained:

> The core of habeas corpus primarily involves a challenge to the fact or duration of confinement.  *See Preiser v. Rodriquez*, 411 U.S. 475, 487-88, 500 (1973).  In *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit held that—in addition to the fact or duration of confinement—a prisoner may also challenge the "execution" of their sentence via a petition under 28 U.S.C. § 2241.  *See id.* at 241-44.  In *Woodall*, the petitioner asserted a challenge to BOP regulations that affected whether he served a portion of his sentence in a federal penal institution or in a "Community Corrections Center" (CCC).  *See id.* at 237.
>
> The Third Circuit agreed with the Second, Sixth, Ninth, and Tenth Circuits and held that habeas jurisdiction lies for prisoners challenging the "manner of their imprisonment," including the place of confinement, when the differences in custody reflect more than a "simple" or "garden variety" prison transfer.  *See Woodall*, 432 F.3d at 242-43.  The panel highlighted the significant disparities between carrying out a sentence in a CCC and carrying out a sentence in an ordinary penal institution and concluded that the petitioner's claim was a "proper challenge to the 'execution' of his sentence," and thus "habeas jurisdiction lies." *Id.* at 243-44.
>
> Following *Woodall*, confusion arose as to what exactly "execution of the sentence" meant for a habeas petitioner.  Even the *Woodall* panel conceded that the precise meaning of this phrase is "hazy."  *Id.* at 242.

8

> In *Cardona v. Bledsoe*, 681 F.3d 533 (3d Cir. 2012), the court of appeals endeavored to clarify execution-of-sentence habeas challenges in the Third Circuit. The *Cardona* panel first performed an in-depth review of *Woodall* and *McGee v. Martinez*, 627 F.3d 933 (3d Cir. 2010), precedential decisions that had considered execution-of-sentence habeas claims and had determined that the claims presented were cognizable under Section 2241. *See Cardona*, 681 F.3d at 536-37.
>
> From these decisions, the *Cardona* panel distilled that the linchpin for habeas jurisdiction for an execution-of-sentence claim was whether the petitioner was challenging the "carrying out" or "putting] into effect" of their sentencing order. *See id.* The reason the petitioners in *Woodall* and *McGee* could seek review of the execution of their sentences under Section 2241, the court of appeals explained, was because their petitions "both challenged BOP conduct that conflicted with express statements in the applicable sentencing judgment." *Id.* at 536. The *Cardona* panel thus held that "[i]n order to challenge the execution of [a] sentence under § 2241, [a petitioner] would need to allege that [the] BOP's conduct was somehow inconsistent with a command or recommendation in the sentencing judgment." *Id.* at 537. In that case, the petitioner had not made such an allegation, so the panel found that he was not properly challenging the "execution" of his sentence and therefore the district court had no jurisdiction to consider his Section 2241 petition. *See id.* at 537, 538.

No. 3:24-CV-2252, 2025 WL 981870, *2–3 (M.D. Pa. Apr. 1, 2025).[2] Judge Munley acknowledged the confusing history on the question in the Third Circuit and cited *Vasquez v. Strada*:

> Most notably, in *Vasquez v. Strada*, 684 F.3d 431 (3d Cir. 2012) (per curiam)—a precedential decision issued just 18 days before *Cardona v. Bledsoe*—the Third Circuit plainly stated that a prisoner "may resort to federal habeas corpus to challenge a decision to limit his RRC placement." *Vasquez*, 684 F.3d at 433 (citing *Woodall*, 432 F.3d at

---

[2] On the same date District Judge Munley entered a second decision using identical logic. *Goss v. Greene*, No. 3:24-CV-1133, 2025 WL 981864 (M.D. Pa. Apr. 1, 2025).

9

> 243-44). In *Vasquez*, the petitioner was not asserting that a BOP action was inconsistent with a command or recommendation in his sentencing judgment; rather, he claimed that the BOP had failed to comply with the federal prisoner reentry initiative with respect to RRC placement and that the BOP had improperly amended 18 U.S.C. § 3621(b) by adding a sixth factor. *See id*. Nevertheless, the court of appeals did not find that the Section 2241 petition must be dismissed for lack of jurisdiction based on the substance of the petitioner's habeas claim. Instead, the panel perfunctorily found the petitioner's prerelease custody claim to be cognizable. *See id*. (citing Woodall, 432 F.3d at 243-44).

*Id*., at *3. Judge Munley concluded that under *Cardona*, "execution-of-sentence habeas claims in the Third Circuit are tightly circumscribed," and held that petitions seeking transfer to pre-release custody based on the FSA that do not allege that the BOP's conduct is somehow inconsistent with a command or recommendation in his sentencing judgment fail to meet the stringent jurisdictional standards set forth in *Cardona*. *Id*., at *5. Directly following this decision, Chief District Judge Brann entered two decisions in line with *Miles*: *Chaffin v. Warden*, No. 4:24-CV-01909, 2025 WL 1042316 (M.D. Pa. Apr. 8, 2025); *McMillian v. Warden*, No. 4:24-CV01730, 2025 WL 1042313 (M.D. Pa. Apr. 8, 2025).

However, a few days later, in *Al Haj v. LCSI-Allenwood Warden*, District Judge Neary held that because *Woodall* and *Vazquez* were earlier precedential holdings of the Third Circuit, *Cardona* could not overrule them because it was a subsequent panel decision of the Third Circuit rather than an *en banc* decision. No. 1:24-CV-1193, 2025 WL 1115751, *3 (M.D. Pa. Apr. 15, 2025).

Since the decision in *Al Haj*, all the decisions addressing the issue in this district have followed the logic set forth in *Miles*. *Torres-Benitez v. Warden, FPC-Schuylkill*, No. 3:25cv1357, 2025 WL 2550864 (M.D. Pa. Sep. 4, 2025); *Barry v. Greene*, No. 3:25cv960, 2025 WL 2983167 (M.D. Pa. Oct. 22, 2025); *Diarra v. Greene*, No. 3:25-CV-0964, 2025 WL 2997031 (M.D. Pa. Oct. 24, 2025); *Rafiq v. Green*, No. 1:25-CR-01409, 2025 WL 3110563 (M.D. Pa. Nov. 6, 2025).

The undersigned is persuaded by the rationale set forth in the *Miles* decision. The court concludes that *Cardona* "delineate[s] the jurisdictional boundaries of execution-of-sentence claims raised in Section 2241 petitions in this circuit." *Miles*, 2025 WL 981870 at *4.

Applying the jurisdictional instruction in *Cardona*, the court observes that Petitioner does not allege that the BOP's conduct is somehow inconsistent with a command or recommendation in his sentencing judgment. (Docs. 1, 1-1.) Therefore, applying *Cardona*'s "rigid" jurisdictional boundaries, Petitioner's habeas challenge is not cognizable. Therefore, his Section 2241 petition must be dismissed for lack of jurisdiction. The court offers no opinion regarding the availability of other potential avenues of review for Petitioner's FSA claim involving pre-release custody, only that it cannot be pursued through a petition under 28 U.S.C. § 2241.

## B. Petitioner's Challenge Under the Second Chance Act is Unexhausted.

Petitioner's final challenge invokes the SCA, stating: "[t]he BOP has additionally violated specific non-discretionary statutory provisions of the SCA as under 18 U.S.C. § 3624(c).  I had a statutory right for individual consideration of the five SCA factors descried in 18 U.S.C. § 3621(b); but the BOP has utterly refused to conduct such determination based on a categorical refusal to conduct such determination for Non-U.S. Citizen prisoners with immigration detainers and/or IHP Participant designation." (Doc. 1-1.)

Under the SCA, the decision of whether to transfer an inmate to prerelease custody is left to the discretion of the BOP.  18 U.S.C. § 3624(c)(4). When exercising this discretion, the BOP must conduct an individualized assessment of whether an inmate should be transferred to prerelease custody based on the following factors:

    (1) the resources of the facility contemplated;

    (2) he nature and circumstances of the offense;

    (3) the history and characteristics of the prisoner;

    (4) any statement by the court that imposed the sentence--

        (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

        (B) recommending a type of penal or correctional facility as appropriate; and

    (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b); *Woodall*, 432 F.3d at 247. Petitioner states this five-step analysis never occurred. (Doc. 1-1.) However, Petitioner admits that he did not exhaust his administrative remedies. (Doc. 1.)

While there is no statutory exhaustion requirement for habeas corpus petitions brought pursuant to Section 2241, the Third Circuit has recognized that "[f]ederal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to [Section] 2241." *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (citations omitted); *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000). Exhaustion is required because: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761–62 (citations omitted); *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981).

Petitioner freely admits that he did not exhaust his administrative remedies. (Doc. 1.) Therefore, he did not provide the BOP the opportunity to correct any of its alleged errors. Instead, Petitioner argues that such exhaustion is not necessary because he is challenging the statutory construction of the FSA and because

13

exhaustion would be futile based on the memorandum issued by the BOP. (Doc. 1, pp. 3–4.)

Petitioner is correct that that there are situations in which exhaustion is excused. Exhaustion is not required if there is no opportunity to obtain adequate redress, if the issue presented only pertains to statutory construction, or if the prisoner makes an affirmative showing of futility. *Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998); *Schandelmeier v. Cunningham*, 819 F.2d 52, 53 (3d Cir. 1986); *Bradshaw*, 682 F.2d at 1052. "Courts in the Middle District of Pennsylvania have consistently held that 'exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals.'" *See Ross v. Martinez*, No. 4:09-cv-1770, 2009 WL 4573686, at *3 (M.D. Pa. Dec. 1, 2009) (quoting *Malvestuto v. Martinez*, No. 1:09-cv-1339, 2009 WL 2876883, at *3 (M.D. Pa. Sept. 1, 2009)); *see also Suarez-Sanchez v. Lane*, No. 4:18-cv-1431, 2019 WL 1645231, at *3–4 (M.D. Pa. Mar. 5, 2019) (concluding that the petitioner's § 2241 petition was subject to dismissal for failure to exhaust because the petitioner "never fully and properly appealed [his] grievance because he apparently deemed the grievance process to be a waste of time"), report and recommendation adopted, 2019 WL 1620339 (M.D. Pa. Apr. 16, 2019).

While the court makes no determination about whether Petitioner is required to exhaust his challenge to the FSA[3], the court concludes that exhaustion is required in his challenge to the SCA. Here, such administrative exhaustion would have given the BOP an opportunity to complete the five-factor analysis required by 18 U.S.C. § 3621(b) or state why no such determination is required. Petitioner's challenge to the SCA determination does not challenge statutory construction, and his argument that such exhaustion was futile because the BOP's internal memorandum means his administrative exhaustion would be denied is unpersuasive. Therefore, the court will dismiss the SCA challenge in the petition.

---

[3] The court does not make a determination regarding the necessity to exhaust the FSA challenge in this instance because it finds that such a challenge is not cognizable under Section 2241.

## CONCLUSION

The Section 2241 petition asserts a challenge under the FSA regarding time in pre-release custody but does not allege that the BOP's conduct is somehow inconsistent with a command or recommendation in his judgment of sentence. As a result, this petition does not meet the jurisdictional requirements set forth in *Cardona*. Additionally, the petition's challenge to the SCA is not exhausted. Therefore, the court must dismiss the petition.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: January 5, 2026